IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| VALENTINE VENTURES, LLC, et al., | ) |
| | ) |
| Plaintiffs, | ) |
| | ) |
| v. | ) CIVIL ACTION 14-0352-WS-M |
| | ) |
| GULF COAST MINERAL, LLC, et al., | ) |
| | ) |
| Defendants. | ) |

**ORDER**

This matter is before the Court on the defendants' motion to dismiss. (Doc. 30). The parties have filed briefs in support of their respective positions, (Docs. 30, 36, 37), and the motion is ripe for resolution.

**BACKGROUND**

The operative pleading is the amended complaint. (Doc. 20).[1] The plaintiffs are Valentine Ventures, LLC, Destiny Energy, LLC, Bruce Wallis and Harvey Kelley. The amended complaint does not explain the relationship among the four plaintiffs, but it does lump them all together under the label, "Valentine/Destiny." (*Id*. at 1).[2]

The defendants are Gulf Coast Mineral, LLC ("GCM"), Gary Billingsley, Patricia Billingsley, Larry Wattles and Judy Wattles. According to the amended complaint, the Billingsleys are members of GCM and the Wattles are employees,

---

[1] Because the original complaint asserted only federal question jurisdiction but pleaded only state claims, the Court required the plaintiffs to file either a brief demonstrating subject matter jurisdiction under the original complaint or an amended complaint reflecting the existence of subject matter jurisdiction. (Doc. 5). The plaintiffs elected the latter approach.

[2] "'Plaintiffs', whether an entity or individual, shall be collectively referred to as ('Valentine/Destiny') …." (*Id*.).

agents, representatives or members of GCM. (Doc. 20, ¶¶ 5-7). The amended complaint lumps all five defendants together under the label, "GCM/Billingsley." (*Id*. at 1).[3] Since the amended complaint equates Valentine/Destiny with "the [four] plaintiffs" and GCM/Billingsley with "the [five] defendants," for ease of comprehension the Court uses this nomenclature in describing the allegations of the amended complaint.

The amended complaint – which is not a model of clarity – alleges that the defendants proposed a plan to the plaintiffs for investing in real estate interests relating to the development of oil, gas and mineral leases. The plan required the plaintiffs to deposit substantial sums of money, which they provided. However, the defendants have not executed the proposed plan and have refused to provide an accounting of these funds. (Doc. 20, ¶¶ 10-15).

The amended complaint also alleges that the defendants have refused to execute any documents to resolve the parties' controversy, have attempted to obtain other assets of the plaintiffs, have misled the plaintiffs by various misrepresentations, and have unilaterally increased cost estimates for overhead from zero to substantial amounts and invoiced the plaintiffs for these sums. (Doc. 20, ¶¶ 16-20).

The amended complaint also alleges that, in June 2011, the defendants executed a document regarding a "Key Largo Project," that the defendants have not presented the accounting provided for in that document, that the defendants failed to obtain the mutual agreement required by the document as to the amount of additional funding to be provided on a pro rata basis, and that the defendants instead caused suit to be brought against the plaintiffs in an effort to gain all assets in the project. (Doc. 20, ¶¶ 21-22).

The amended complaint also alleges that, in April 2012, the defendants executed an addendum to the June 2011 agreement, that the addendum called for

---

[3] "'Defendants', whether an entity or individually [sic], shall be collectively referred to as ('GCM/Billingsley') …." (*Id*.).

the defendants to prepare a "term sheet" and a "lease report," and that the defendants have never provided any reports of any kind to the plaintiffs. (Doc. 20, ¶ 23).

The amended complaint also alleges that, in August 2012, a second addendum was proposed, that it refers to the "West Teel Creek" prospect, and that it also refers to an "AMI." (Doc. 20, ¶ 24).

The amended complaint also alleges that the plaintiffs were billed for a share of the Libertyville leases but were not assigned a share of the Libertyville leases. (Doc. 20, ¶¶ 25-26).

The amended complaint also alleges that the plaintiffs were not assigned a share of the Renpetco agreement and that they were not assigned a share of the revenues from the Renpetco agreement until they discovered the defendants' lack of such reporting by other means. (Doc. 20, ¶¶ 27-29).

The amended complaint then sets forth nine counts, some of which include additional factual allegations: (1) RICO; (2) breach of contract; (3) fraud; (4) breach of fiduciary duty; (5) accounting; (6) unjust enrichment; (7) negligence; (8) wantonness; and (9) constructive trust/other equitable relief. (Doc. 20 at 6-17). The amended complaint concludes with a section on punitive damages, a prayer for relief, and a jury demand. (*Id*. at 17-19).

The defendants move to dismiss pursuant to Rules 9(b) and 12(b)(6). (Doc. 30 at 1).

## DISCUSSION

To survive dismissal under Rule 12(b)(6), a complaint must first satisfy the pleading requirements of Rule 8(a)(2). *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "A pleading that states a claim for relief must contain … a short and plain statement of the claim showing that the pleader is entitled to relief …." Fed. R. Civ. P. 8(a)(2). Rule 8 establishes a regime of "notice pleading."

*Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 512, 513-14 (2002).  It does not, however, eliminate all pleading requirements.

First, the complaint must address all the elements that must be shown in order to support recovery under one or more causes of action.  "At a minimum, notice pleading requires that a complaint contain inferential allegations from which we can identify each of the material elements necessary to sustain a recovery under some viable legal theory." *Wilchombe v. TeeVee Toons, Inc.*, 555 F.3d 949, 960 (11th Cir. 2009) (emphasis and internal quotes omitted).

Pleading elements is necessary, but it is not enough to satisfy Rule 8(a)(2).  The rule "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do" to satisfy that rule. *Twombly*, 550 U.S. at 555.  There must in addition be a pleading of facts.  Though they need not be detailed, "[f]actual allegations must be enough to raise a right to relief above the speculative level ...." *Id*.  That is, the complaint must allege "enough facts to state a claim for relief that is plausible on its face." *Id*. at 570.  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  "The plausibility standard … asks for more than a sheer possibility that the defendant has acted unlawfully," and "[w]here a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." *Id*. (internal quotes omitted).  A complaint lacking "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face" will not "survive a motion to dismiss." *Id*.  But so long as the plausibility standard is met, the complaint "may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and that a recovery is very remote and unlikely." *Twombly*, 550 U.S. at 556 (internal quotes omitted).

A complaint that fails to plead enough facts to meet the plausibility standard is subject to dismissal under Rule 12(b)(6).  But the complaint is so

exposed only if the defendant moves for dismissal under that rule, invokes the plausibility standard, *and* makes a satisfactory showing that, in certain, specified respects, for certain, specified reasons, the complaint falls short of that standard.[4] "Vague, generalized assertions that a claim is somehow implausible, without a clear, supported explanation of just what is implausible and why, places no burden on the Court to supply the deficiency or on the plaintiff to respond." *FNB Bank v. Park National Corp.*, 2013 WL 1748796 at *2 (S.D. Ala. 2013).

More generally, "[t]here is no burden upon the district court to distill every potential argument that could be made based upon the materials before it on summary judgment." *Resolution Trust Corp. v. Dunmar Corp.*, 43 F.3d 587, 599 (11th Cir. 1995). The Court's review on this motion to dismiss is similarly limited to those arguments the parties have expressly advanced. *E.g., Jurich v. Compass Marine, Inc.*, 908 F. Supp. 2d 1225, 1228 (S.D. Ala. 2012). Moreover, "a passing reference to an issue in a brief [is] insufficient to properly raise that issue," *Transamerica Leasing, Inc. v. Institute of London Underwriters*, 430 F.3d 1326, 1331 n.4 (11th Cir. 2005), and the Court will not supply legal or analytical support the parties have declined to offer themselves.

**I. RICO.**

The only predicate acts on which the plaintiffs base their RICO claim are mail fraud and wire fraud. (Doc. 20, ¶ 35). Therefore, "their substantive RICO allegations must comply not only with the plausibility criteria articulated in *Twombly* and *Iqbal* but also with Fed.R.Civ.P. 9(b)'s heightened pleading standard …", *American Dental Association v. Cigna Corp.*, 605 F.3d 1283, 1291 (11th Cir. 2010) ("*ADA*"), which requires that "a party must state with particularity the

---

[4] This necessarily follows from the principle that the movant bears the burden of showing that dismissal for failure to state a claim is warranted. *E.g., Beck v. Deloitte & Touche*, 144 F.3d 732, 735-36 (11th Cir. 1998); *Continental Motors, Inc. v. Jewell Aircraft, Inc.*, 882 F. Supp. 2d 1296, 1314 n.26 (S.D. Ala. 2012).

circumstances constituting fraud ….." Fed. R. Civ. P. 9(b).  In order to satisfy Rule 9(b), the plaintiffs must allege:  "(1) the precise statements, documents, or misrepresentations made; (2) the time, place, and person responsible for the statement; (3) the content and manner in which these statements misled the Plaintiffs; and (4) what the defendants gained by the alleged fraud."  *ADA*, 605 F.3d at 1291 (internal quotes omitted).  The particularity requirement must be met as to each defendant.  *Id*. ("The plaintiff must allege facts with respect to each defendant's participation in the fraud.").  The defendants deny that Count I satisfies Rule 9(b).  (Doc. 30 at 10-11).  The Court agrees.

While Count I alleges that the defendants committed mail and wire fraud, (Doc. 20, ¶¶ 33, 35), the amended complaint nowhere identifies any statement (misrepresentation) that was made by mail or wire, the time of any such representation, the place from and/or to which the representation was made, or the person making the representation.  The plaintiffs rest on the allegations of paragraphs 21-29, (Doc. 36 at 2-3), but these paragraphs do not even allege the use of the mails or wire communications, much less address all the items required by Rule 9(b) and *ADA*.[5]

## II. Breach of Contract.

Count II alleges that the defendants "entered into a contractual relationship with" the plaintiffs and "refused to comply with said agreements and/or promises as stipulated."  (Doc. 20, ¶¶ 39-40).  The defendants complain that Count II "fails to allege that any particular defendant breached a duty under any contract to which he or she was a party."  (Doc. 30 at 14).  The Court cannot agree.  Count II alleges that all five defendants were in a contractual relationship with all four plaintiffs.  While it seems exceedingly unlikely that the plaintiffs can defensibly allege that

---

[5] By focusing on the first two *ADA* requirements, the Court does not warrant that the amended complaint is adequate as to the third and fourth requirements.

6

they were each in a direct contractual relationship with each defendant, that is a question to be considered under Rule 11, not here.

As noted, to survive dismissal a complaint must address all elements of a cause of action. One essential element of a breach of contract claim under Alabama law is "the plaintiff's own performance." *Armstrong Business Services, Inc. v. AmSouth Bank*, 817 So. 2d 665, 673 (Ala. 2001). As the defendants correctly point out, (Doc. 30 at 15), the amended complaint fails to allege that the plaintiffs have performed the obligations imposed on them under the parties' contractual relationship. The plaintiffs offer no relevant response.[6]

## III. Fraud.

The defendants again invoke Rule 9(b). (Doc. 30 at 13-14). The Court again agrees. While Count III does at least list general subject matters as to which misrepresentations were made, (Doc. 20, ¶¶ 19, 43), it continues Count I's failure to identify any specific statement (misrepresentation) that was made, the time of any such representation, the place from and/or to which the representation was made, or the person making the representation. The plaintiffs, who rest entirely on their response regarding Count I, (Doc. 36 at 4), have done nothing to shake this conclusion.

## IV. Breach of Fiduciary Duty.

The defendants argue that Count IV is "simply a parroting of legal standards" that fails to identify "any act or omission which would, if accepted as true for purpose[s] of 12(b)(6) analysis, constitute a breach of fiduciary duty." (Doc. 30 at 15). But the defendants do not identify what is required to constitute a breach of fiduciary duty, and they do not explain how the three full pages of

---

[6] As to Counts II and IV-IX, the plaintiffs simply conclude that "[a]ll the Counts stated above contain the factual allegation requirements of Rule 8 [sic], and accordingly, state a cause of action." (Doc. 36 at 4). Such glittering generalities do not assist the plaintiffs.

allegations contained in Count IV, including factual allegations concerning self-dealing and efforts to squeeze out the plaintiffs, fail to satisfy *Twombly*. Indeed, Count IV is not nearly as "formulaic," (*id*.), as is the defendants' presentation. As promised, the Court will not construct or support arguments on the defendants' behalf.

The defendants' only other argument is that Count IV does not address each defendant individually and identify challenged acts or omissions specific to that defendant. (Doc. 30 at 15). As the Court reads Count IV, it alleges that all five defendants engaged in every act or omission identified therein. As stated in Part II, such pleading may expose the plaintiffs and their counsel to sanction under Rule 11, but it does not reflect a failure to plead as to any defendant.

## V. Accounting.

The defendants argue that Count V fails to allege that any defendant "engag[ed] in any position [sic] which … would impose a duty to account upon that particular defendant." (Doc. 30 at 16). Because the defendants have not identified what must be pleaded in order to reflect the existence of a duty to account, the Court cannot accept their argument.

The defendants criticize Count V (an equitable claim) for stating, in language identical to that used in the counts asserting legal claims, that the plaintiffs have suffered compensatory damages, and for implying that they seek such damages, plus punitive damages. (Doc. 30 at 16). This is indeed poor drafting, and it may well indicate that the plaintiffs and their counsel have not thought through what they are seeking from whom and why, but it is not a pleading deficiency that justifies dismissal.

## VI. Unjust Enrichment.

The defendants object that Count VI fails to explain how any defendant has been enriched. (Doc. 30 at 16). Count VI, however, incorporates by reference

previous allegations of the amended complaint, which do or may supply the deficiency. While the amended complaint's usage of incorporation by reference is itself a problem, addressed in Part X, the Court cannot conclude on the defendant's skeletal briefing that Count VI suffers from the defect alleged.

The defendants also argue that the amended complaint negates an unjust enrichment claim. (Doc. 30 at 16-17). The Court agrees. An unjust enrichment claim that alleges the existence of an express contract covering the same subject matter "must fail as a matter of law." *Gould v. Transamerica Life Insurance Co.*, 2012 WL 512667 at *3 (S.D. Ala. 2012). Count VI incorporates by reference all preceding allegations, (Doc. 20, ¶ 72), which includes the allegations of an express contract. (*Id.*, ¶ 39-40). Thus, as in *Gould*, the defendants are entitled to dismissal of Count VI.

### VII. Negligence.

Count VII alleges that the defendants failed to use reasonable care to prevent harm to the plaintiffs. (Doc. 20, ¶ 76). The defendants suggest that Count VII does not allege specific conduct that was negligent, (Doc. 30 at 17-18), but, as with Count VI, they have failed to show that the incorporated paragraphs of the amended complaint do not do so.

### VIII. Wantonness.

The defendants repeat their argument from Count VII, (Doc. 30 at 18), with like result.

### IX. Equitable Trust/Other Equitable Relief.

The defendants complain that Count IX does not explain what any defendant did that justifies imposition of a constructive trust or the granting of any other equitable relief. (Doc. 30 at 18-19). This argument fails for reasons set forth in Parts IV through VIII.

**X. Shotgun Pleading.**

A "shotgun pleading" is a complaint in which "each count incorporate[s] by reference all preceding paragraphs and counts of the complaint notwithstanding that many of the facts alleged [a]re not material to the claim, or cause of action, appearing in a count's heading." *Thompson v. RelationServe Media, Inc.*, 610 F.3d 628, 650 n.22 (11th Cir. 2010). A complaint may also be a shotgun pleading if it makes allegations against "the defendants" indiscriminately even though "geographic and temporal realities make plain that all of the defendants could not have participated in every act complained of." *Magluta v. Samples*, 256 F.3d 1282, 1284 (11th Cir. 2001). The Eleventh Circuit "ha[s] been roundly condemning [shotgun pleadings] for 30 years." *Keith v. DeKalb County*, 749 F.3d 1034, 1045 n.39 (11th Cir. 2014).[7]

The evils of shotgun pleading are so pernicious that, if a defendant does not move for a more definite statement, the Court "must intervene sua sponte and order a repleader." *Thompson*, 610 F.3d at 698. "Implicit in such instruction is the notion that if the plaintiff fails to comply with the court's order – by filing a repleader with the same deficiency – the court should strike his pleading or, depending on the circumstances, dismiss his case and consider the imposition of monetary sanctions." *Id.* at 699.

The defendants characterize the amended complaint as a shotgun pleading, (Doc. 30 at 9-10), and the Court agrees. Every count of the amended complaint incorporates every preceding paragraph, and it is plain that every paragraph cannot possibly be relevant to every count that incorporates it. Neither the defendants nor the Court is required to guess which allegations are intended to support, for example, the plaintiffs' negligence, wantonness and constructive trust counts.

---

[7] As of 2008, the Eleventh Circuit had "explicitly condemned shotgun pleadings upwards of fifty times." *Davis v. Coca-Cola Bottling Co.*, 516 F.3d 955, 979 n.54 (11th Cir. 2008).

It is less clear that the amended complaint is a shotgun pleading with respect to its pleading as to all defendants ("GCM/Billingsley") generally. The defendants have not shown that, as in *Magluta*, the amended complaint's own allegations of time and place make it facially impossible for all defendants to have engaged in all the objectionable conduct. However, as noted previously, the patent unlikelihood that all defendants engaged in each challenged act means that the plaintiffs and their counsel risk sanction under Rule 11 if they persist in such general pleading without sufficient basis for doing so.

**XI. Amendment.**

In sum, the defendants' motion to dismiss the amended complaint is due to be granted in its entirety. The plaintiffs request permission to file a second amended complaint addressing any deficiencies in the current version. (Doc. 36 at 4-5).

"Where a more carefully drafted complaint might state a claim, a plaintiff must be given at least one chance to amend the complaint before the district court dismisses the action with prejudice." *Bank v. Pitt*, 928 F.2d 1108, 1112 (11th Cir. 1991). While "[a] district court is not required to grant a plaintiff leave to amend his complaint sua sponte when the plaintiff, who is represented by counsel, never filed a motion to amend nor requested leave to amend before the district court," *Wagner v. Daewoo Heavy Industries America Corp.*, 314 F.3d 541, 542 (11th Cir. 2002) (en banc), that exception does not apply here, where the plaintiffs have expressly sought leave to amend.

The defendants, however, oppose amendment. Their reasoning is that the plaintiffs have already had three chances to file a viable complaint and "should not be granted a fourth bite at the apple." (Doc. 30 at 19). The Court cannot subscribe to the defendants' arithmetic. The plaintiffs' first bite, say the defendants, was a counterclaim they filed in the state action brought by the defendants herein, but the defendants do not explain how a state court pleading can count against the

11

plaintiffs in this federal action. The plaintiffs' second bite, say the defendants, was the original complaint in this action, but the defendants do not explain how a complaint which the plaintiffs amended before the defendants registered any challenge to its adequacy – and for the sole purpose of correcting a deficiency in the pleading of jurisdiction – can count against them for purposes of *Bank*. Thus, the first amended complaint constitutes the initial complaint for purposes of *Bank*. Because it is apparent that a more carefully drafted complaint might state a claim, the plaintiffs' request, construed as a motion, is due to be granted.[8]

## CONCLUSION

For the reasons set forth above, the defendants' motion to dismiss is **granted**, and the plaintiffs' motion for leave to file a second amended complaint is also **granted**. The plaintiffs may file a second amended complaint on or before **February 19, 2015**, failing which the Court will enter final judgment in favor of the defendants. The plaintiffs should not assume they will be granted leave to file a third amended complaint should the defendants successfully pursue a motion to dismiss the second amended complaint. Nor should the plaintiffs assume that the deficiencies addressed in this order are the only potentially fatal defects in the first amended complaint.

DONE and ORDERED this 5th day of February, 2015.

s/ WILLIAM H. STEELE
CHIEF UNITED STATES DISTRICT JUDGE

---

[8] The defendants suggest that leave to amend the RICO claim should be denied because such a claim is "stigmatizing and costly." (Doc. 30 at 11-12). But they cite no authority for the proposition that there is a "RICO exception" to *Bank*. *See Govan v. Pensions Annuities & Settlements LLC*, 532 Fed. Appx. 900, 901 (11th Cir. 2013) (trial court erred by dismissing RICO claim without first granting leave to amend).