IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

VALENTINE VENTURES, LLC,     *
DESTINY ENERGY, LLC,
BRUCE WALLIS, and           *
HARVEY KELLEY

                        *

    Plaintiffs,
V.                     *     Civil Case No.  14-0352

GULF COAST MINERAL, LLC,    *
GARY BILLINGSLEY,
PATRICIA A. BILLINGSLEY,    *
LARRY WATTLES, and
JUDY WATTLES,           *

    Defendants.        *

## COMPLAINT - AMENDED

### Jurisdiction

The jurisdiction of this Court is invoked pursuant to  28 U.S.C. §1331, and  18 U.S.C. §1964(c), this being an action authorized by law to redress and seek compensation for the deprivation of contractual rights and financial funds directly and proximately caused by the fraudulent use of means affecting interstate commerce in violation of the Racketeer Influenced and Corrupt Organizations Act  (RICO), 18 U.S.C. § 1961 et seq.   Plaintiffs also invoke the pendant  jurisdiction of the Court to decide claims arising under State law.

### PARTIES

**"Plaintiffs", whether an entity or individual, shall be collectively referred to as ("Valentine/Destiny") unless specifically stated otherwise,  and "Defendants", whether an entity or individually, shall be collectively referred to as ("GCM/Billingsley") in the above**

**entitled action**

1.  Plaintiff  Valentine Ventures, LLC ("Valentine") is a limited liability company formed under the laws of the State of Alabama, with its principal location of business located at 1590 Highway 49, Columbiana, Alabama  35051.

2.  Plaintiff Destiny Energy, LLC ("Destiny") is a limited liability company formed under the laws of the State of Louisiana, with its principal location of business located at 650 Poydras Street, Suite 2415, New Orleans, Louisiana  70130.

3.  Plaintiff  Bruce Wallis ("Wallis") is a resident citizen of Orleans Parish, Louisiana and is over the age of 19 years.

4.  Plaintiff  Harvey Kelley ("Kelley") is a resident citizen of St. Tammany Parish, Louisiana, and is over the age of 19 years.

5.  Defendant Gulf Coast Mineral, LLC ("GCM") is a limited liability company formed under the laws of the State of Alabama, with its principal location of business located at 109 East 14th Avenue, Gulf Shores, Alabama  36542.  GCM's members, to Valentine/Destiny's knowledge, information and belief, are Gary Billingsley and Patricia A. Billingsley.

6.  Defendants Gary Billingsley and Patricia A. Billingsley ("Billingsley") are resident citizens of Baldwin County, in the State of Alabama, and are over the age of 19 years.

7.  Defendants Larry Wattles and Judy Wattles ("Wattles") are employees, agents, representatives and/or members of Gulf Coast Mineral, LLC, and to Valentine/Destiny's knowledge, information and belief, are resident citizens of the State of Alabama.

8.  The amount in controversy herein exceeds the sum of $200,000.00, exclusive of interest and costs.

9.  A substantial part of the events or omissions giving rise to the claims occurred in Covington County, Alabama.


## FACTS

10.  GCM/Billingsley by and through their officers, employees, agents and/or assigns proposed a plan to Valentine/Destiny for the investment of funds dealing with the purchase of real estate interests in certain counties within the State of Alabama, predominantly Conecuh and Covington County, relating to the development of oil, gas and minerals leases.

11.  GCM/Billingsley's proposed plan required Valentine/Destiny to deposit money and/or pay to GCM/Billingsley, their agents, officers, employees and/or assigns substantial sums of money for an interest in oil, gas and mineral leases in  Projects in Alabama known as Key Largo, West Teel Creek, and Libertyville,  and in Lafourche Parish, Louisiana known as West Cutoff .

12.  On or about June 21, 2011, subsequent to negotiations by email, U.S. Mail, telephone, Gary Billingsley coming from Alabama to Louisiana for a meeting, and other modes of communication, Gulf Coast Mineral, LLC, and  Valentine/Destiny entered into a cost sharing agreement pertaining to the development of oil, gas and mineral leases on a designated area of land in Covington County, AL, the agreement was referred to as the Key Largo Project.  It was agreed between the parties that Valentine/Destiny would have a combined 75% ownership interest in the leases, and  Gulf Coast Mineral, LLC, a 25% ownership interest.  All relevant negotiations pertaining to the agreement were done by means of the telephone and electronic mail.  Subsequent to the parties reaching their agreement, the contract was sent to each party by electronic mail for their signature.  All monetary funds exchanged were predominantly paid by

bank checks and bank wire transfers.   A proposed budget was attached to the agreement, and the parties agreed  to pay their pro rata share of the estimated budget.   The budget showed there was to be zero Overhead Costs.  Valentine/Destiny paid  the amounts indicated in the initial cost estimates, and all other costs they were obligated to pay.  Gulf Coast Mineral agreed it would provide an accounting to the partners showing landman costs, lease bonuses paid, legal and any other costs associated with the Key Largo Project.  It was agreed between the parties that if the estimated budget f or acquisition of the Key Largo Project required additional funding, the parties would have to agree on the additional funding which was to be on a pro rata basis.

13.  On or about March 29, 2012, an addendum was added to the June 21, 2011 agreement.  The addendum  stated Gulf Coast Mineral had ceased leasing and would do no further  title work  on the Key Largo Project until the deal was sold.

14.  On or about August 17, 2012, a second addendum was added to the June 21, 2011 agreement.  The second addendum set forth terms and sharing arrangements pertaining to a land area  known as West Teel Creek.  The sharing ratio for cost and revenue for this portion of  land was Gulf Coast Mineral  50% , and Valentine/Destiny 50%.

15.  On or about August 23, 2012, Gulf Coast Mineral negotiated a sale of the Key Largo Project, which included the West Teel Creek leases, to Renaissance for $711,065.92.  Combined with sums received from other investors, the sales price for Key Largo was $875,000.00.   It was understood by all parties that upon receiving the money from Renaissance, that all costs were covered, and that Renaissance would take over all future leasing activities.  Valentine/Destiny retained an interest of 7.5% in the Key Largo Project, and a 5.125% interest in the West Teel Creek leases.   Gulf Coast Mineral also retained an interest in the Key Largo Project and West Teel Creek leases.  The parties agreed to an immediate distribution of part of the $875,000.00

that had accrued from the sale, with a further distribution to be made when the final accounting

was completed, as outlined in a September 4, 2012 email from Gary Billingsley to Bruce Wallis.

Gary Billingsley divided $300,000.00 between the parties, $150,000.00 was wired to Destiny,

$75,000.00 to Valentine Ventures, and he retained $75,000.00 for Gulf Coast Mineral.

16. Subsequent to the initial $300,000.00 disbursement, Valentine/Destiny repeatedly

asked Gulf Coast Mineral for a final accounting so the balance of the $875,000.00 could be

distributed to the partners, and requested a meeting with Gulf Coast Mineral to go over the

accounting. No action was taken by Gulf Coast Mineral as to either of Valentine/Destiny's

requests. Though Valentine/Destiny had an agreement with Gulf Coast Minerals that they were

to retain a 7.5% interest in the Key Largo Project, and a 5.125% interest in the West Teel Creek

leases, in Gulf Coast Mineral's negotiations with Renaissance for the purchase of the Key Largo

Project and the West Teel Creek leases, Gulf Coast Mineral did not notify Renaissance of

Valentine/Destiny's said retained interest, and accordingly, Renaissance attributed their retained

interest to Gulf Coast Mineral. Gulf Coast Mineral asked Renaissance to modify the purchase

agreement to include Valentine/Destiny as signatories to the agreement. Renaissance advised

Gulf Coast Mineral that it preferred for Gulf Coast Mineral to make an assignment of the

agreement to Valentine/Destiny. Gulf Coast Mineral never made the assignment. However, in

an email dated January 16, 2013, Gary Billingsley asked Valentine/Destiny to pay their

proportionate share of an invoice for $68,000.00 it had received from Renaissance to pay for the

partners' retained interest share of additional leasing that had been done in the Key Largo and

West Teel Creek areas. Valentine/Destiny advised Gary Billingsley by email that there was

more profit to be distributed to the partners from the Renaissance purchase, and that Gulf Coast

Mineral needed to either pay the entire bill on behalf of the partners, or make a further

distribution to the partners in order to pay the bill.  Gary Billingsley responded saying he thought all the profit had been distributed, but that he would check the numbers.  After checking the numbers, Gulf Coast Mineral paid the entire bill.

17.   Valentine/Destiny continued to press for a final accounting.  On February 28, 2013, Judy Wattles sent an email to Valentine/Destiny saying she had completed the final billing and that Gary Billingsley had taken it home to review.  On March 20, 2013, Judy Wattles forwarded by email  a series of individual project statements, as well as a global final statement for all projects dated March 18, 2013, which contained a notation it was approved by Gary Billingsley on March 20, 2013.  The statement, inter alia, contained invoices for items that were not part of the agreed expenses for the venture, e.g. $54,750.00 of overhead charges, as well as new invoices that went back months/years that had never been billed before.  The sum total of the billings indicated that after making a distribution of $300,000.00 in September, 2012, and after paying an invoice for all partners for $68,495.00 in January, 2013, Gulf Coast Mineral was owed $1,775.91 by Destiny.  On April 11, 2013, Bruce Wallis sent an email to Judy Wattles saying that, in his thirty five years of business, he had never encountered accounting as poorly done as Gulf Coast Mineral's, noting that invoices had disappeared, invoice amounts had changed, invoice numbers had changed, new invoices had appeared, and saying that every time a new statement came out, things were changed with no rhyme or reason, and one would have to start from scratch each time to try and follow what was going on.  Wallis determined that Gulf Coast Mineral advised Renaissance its expenses for West Teel Creek was $20,565.00, however, Gulf Coast Mineral billed Valentine/Destiny for costs  of approximately $80,000.00.  Wallis  asked for copies of invoices, credit memos, etc. be sent to him.  Judy Wattles responded saying that she, Gary and Pat Billingsley had spent countless hours working on the statements.  Bruce Wallis

noticed a billing from Renpetco (agent of Renaissance),  in the sum of $77,161.51 that had been

paid by Renpetco to Gulf Coast Mineral.  When Bruce Wallis inquired of Renpetco what the

payments were for, he was told that it was payment to Gulf Coast Mineral for the acreage that

was leased over the 2,000 acres that the deal was originally planned for.  Wallis realized that

Gulf Coast Mineral had billed Valentine/Destiny for this acreage, but had never told them about

this revenue, did not  include it in the final statement of accounts, and had not acknowledged in

any way the receipt of the additional revenue from Renpetco.  On May 22, 2013, Gary

Billingsley sent an email to Bruce Wallis saying he would look at the accounts starting the next

week, and would get back to Wallis when they were done.  The next communication Bruce

Wallis received from Gary Billingsley was on August 1, 2013, when Judy Wattles sent two new

invoices numbered #382 and #385.  Invoice #382 was for a total amount of $5,315.00, and

Destiny's 50% share was for $2,657.50, and Invoice #385 was for a total amount of $600.00, and

Destiny's 50% share was for $300.00.  Both invoices were marked PAID and showed credit

amounts at the bottom equal to the amounts of the invoices.

18.  When it became clear Gary Billingsley was not going to meet with the partners to

settle the accounts, and no further movement had been made towards rectifying the accounting,

nor any indication about a third party accounting, Bruce Wallis contacted an attorney who

drafted a Demand Letter, and Wallis, on Wallis' letterhead, forwarded it to Gulf Coast Mineral a

demand letter for the payment of $87,262.82 for the additional monies owed to Destiny, which

had been calculated by Bruce Wallis.  Wallis sent the demand letter to Gulf Coast Mineral

attached to an email dated October 28, 2013.  Gary Billingsley sent Wallis an email on October

29, 2013 and November 4, 2013, inquiring how Wallis derived his demand amount.  On

November 6, 2013, Wallis sent an email to Gary Billingsley explaining his computation.  On

November 13, 2013, Wallis wrote a letter to Gary Billingsley asking for a response status.  On November 13, 2013, Billingsley responded to Wallis stating they were working on it, and should have an update in a day or so.  On November 14, 2013, Billingsley responded to Wallis by sending  completely new invoices and one credit memo, which Wallis, nor any Plaintiff, had seen before, totaling a net $111,426.78 of new charges for a project that had finished approximately fifteen months earlier, and approximately eight months after the submission of the final statement prepared by Gary Billingsley, Pat Billingsley and Judy Wattles, which had been approved by Gary Billingsley on March 20, 2013.  The new charges predominantly pertained to land work, which was headed and supervised by Larry Wattles.  The new statement now showed Destiny owed a balance of $11,414.37.

19.  On November 14, 2013, the date the new statement was filed, Gulf Coast Mineral filed suit against Valentine Ventures, LLC, Destiny Energy,  LLC, Bruce Wallis, and Harvey Kelly in the Circuit Court of Conecuh County, AL.  In the Conecuh County suit, Gulf Coast Mineral is seeking to have the Court to reduce or eliminate the aforestated parties' interest in the Key Largo Project and West Teel Project leases which are the subjects in the instant complaint, for allegedly  not paying their proper share of  expenses under the contract in the instant case.

20.  Gulf Coast Mineral has been involved in a number of lawsuits relating to oil and gas investment fraud, and is currently being counter-sued in the United States District Court for the Middle District of Alabama, for RICO violations,  Gulf Coast Mineral LLC v. Tryall Omega, Inc. et al, Case No. CV 14-01264.

**COUNT  I**

<u>VIOLATIONS OF THE RACKETEER INFLUENCED AND CORRUPT
ORGANIZATIONS ACT 18 U.S.C. § 1961 et seq.</u>

21.  The statements contained in paragraphs 1 through 20 above are fully incorporated

herein and are to be construed as allegations and averments by Valentine/Destiny.

22.  Valentine/Destiny allege that GCM/Billingsley engaged in corrupt and illegal

racketeering activity as set forth above, over a period of several months in an organized effort to

convert opportunities to their own benefit in a series of numerous transactions entered into by

Valentine/Destiny.  GCM/Billingsley devised a scheme whereby they utilized investor's money

to obtain  an interest in oil, gas and mineral leases.  The investors would have to pay

GCM/Billingsley for the expenses for the leases according to their pro rata ownership interest in

said leases.  GCM/Billingsley would send invoices to the investors by U.S. Mail, email, or other

delivery, regarding alleged incurred expenses pertaining to specified leases, but would withhold

the accounting data pertaining to the alleged expenses.  Without any checks and balances being

in place to verify whether GCM/Billingsley was properly billing the investor,  GCM/Billingsley

could allege any expense amount and require payment from the investor.  If the investor failed or

refused to pay the unverified bill submitted by GCM/Billingsley, GCM/Billingsley would file

suit and seek to obtain the investor's interest in the lease due to the investor's failure or refusal to

pay GCM/Billingsley's  unverified lease expense bill.   In the instant case, GCM/Billingsley sold

Renaissance  leases in which  Valentine/Destiny had an interest.   Of the $875,000.00

GCM/Billingsley held from the sale of the leases, GCM/Billingsley only distributed $300,000.00

to the investors.  When Valentine/Destiny requested an accounting from GCM/Billingsley as to

the accounting relating to the Renaissance purchase, and all financial matters relating thereto, so

a determination could be made as to what further payment Valentine/Destiny was due,

GCM/Billingsley stalled for months before giving any type of accounting.  Different accountings

were given to Valentine/Destiny, some indicated they owed lease expenses, others showed they

had a credit.  GCM/Billingsley paid a bill to Renaissance which  Valentine/Destiny allegedly

owed, which indicates Valentine/Destiny had a credit with GCM/Billingsley .   After the

exchange of several emails between Valentine/Destiny and GCM/Billingsley, and not being able

to obtain any type of verified accounting from GCM/Billingsley, Valentine/Destiny emailed a

demand letter to GCM/Billingsley requesting payment due them.  GCM/Billingsley responded

with an email, created a new unverified expense bill for Valentine/Destiny to pay, then filed

filed suit against Valentine/Destiny  in the Circuit Court of Conecuh County, AL.  In the

Conecuh County suit, Gulf Coast Mineral is seeking to have the Court to reduce or eliminate the

aforestated parties' interest in the Key Largo Project and West Teel Project leases which are the

subjects in the instant complaint, for allegedly  not paying their proper share of  expenses under

the contract in the instant case.  Further, Gulf Coast Mineral has retained whatever balance from

Renaissance's lease purchase.

   23.  The RICO violations directly injured Valentine/Destiny by causing them to suffer a

loss of their financial investments which they otherwise  would not have but for

GCM/Billingsley's corrupt and illegal racketeering activities.

   24.  GCM/Billingsley by and through their officers, employees, agents and/or assigns, all

participated in the use of the United  States Mail, interstate telephone lines, and other modes of

interstate communications as set forth above, and all engaged in a pattern of racketeering activity

as defined in the RICO Act.

   25.  From in or about 2011 through the present, GCM/Billingsley by and through their

officers, employees, agents and/or assigns, all of whom are persons within the meaning of RICO,

were employed by, associated with, and profited from an enterprise whose activities engaged in

or affected interstate commerce and conducted or participated, directly or indirectly, in the

conduct of such enterprise's affairs through a pattern of racketeering activity in violation of the RICO Act.

26.  GCM/Billingsley by and through their officers, employees, agents and/or assigns, all violated the RICO Act, having devised or intended to devise a scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent  pretenses, representations, or promises transmitted or caused to be transmitted by means of the United States Mail, interstate telephone lines, and other modes of interstate communications as set forth above.

27.  The facts demonstrate that  GCM/Billingsley by and through their officers, employees, agents and/or assigns,  formed an association-in-fact, concerning the RICO enterprise, and the various associates functioned as a continuing unit of the RICO enterprise.

28.  The actions of GCM/Billingsley by and through their officers, employees, agents and/or assigns, affected interstate commerce in that some of the transactions crossed State Lines, and further, by the use of the United States Mail, interstate telephone lines, and other modes of interstate communications as set forth above.

Wherefore, premises considered, Valentine/Destiny demand judgment against GCM/Billingsley in an amount in excess of the minimal jurisdictional limit of the Court for actual damages, treble damages under 18 U.S.C. § 1964(c), compensatory damages, punitive damages, costs, interest, and reasonable attorneys' fees, and such other relief deemed just by the Court.

## COUNT II

### (Breach of Contract)

### WANTS INTEREST FROM RENAISSANCE SALE

29.  The statements contained in paragraphs 1 through 28 above are fully incorporated herein and are to be construed as allegations and averments by Valentine/Destiny.

30.  Gulf Coast Mineral and Gary Billingsley, by and through their officers, employees, agents and/or assigns entered into a contractual relationship with Valentine/Destiny.

31.  Gulf Coast Mineral and Gary Billingsley, by and through their officers, employees, agents and/or assigns, failed and/or refused to comply with said agreements and/or promises as stipulated.

32..  Due to said failure and/or refusal by Gulf Coast Mineral and Gary Billingsley, by and through their officers, employees, agents and/or assigns, Valentine/Destiny have suffered and continue to suffer irreparable financial damages including but not limited to the initial investment entrusted to Gulf Coast Mineral and Gary Billingsley, by and through their officers, employees, agents and/or assigns, but also opportunity costs.  Said damages to be in excess of TWO HUNDRED THOUSAND DOLLARS ($200,000.00).

## COUNT III
### (Fraud)

33.  The statements contained in paragraphs 1 through 32 above are fully incorporated herein and are to be construed as allegations and averments by Valentine/Destiny.

34.  Gulf Coast Mineral and Gary Billingsley,  by and through their officers, employees, agents and/or assigns, committed FRAUD  by making false representations, promises, and statements concerning material facts, including but not limited to, promise to provide data of assets, promise to provide full accounting of the KEY LARGO PROJECT, and promises to "mutually agree" upon expenses.  As a proximate cause of the false promises Valentine/Destiny relied upon said false promises, false statements and/or false representations; that each named

person and entity were deceived by the false promises, and that each have been and continue to

be harmed as a proximate result of reliance upon the false promises, statements and/or

representations.

35.  Valentine/Destiny further state that their reliance was justified under the

circumstances because such promises are well within normal business operations.  Indeed,

truthful promises of accounting, documentation and reporting of the money and assets of one's

partners, associates, and/or investors is typical and protected by law.  Gulf Coast Mineral and

Gary Billingsley's falsehood, and intent to deceive, has brought this to the level of FRAUD.

36.  As stated, damages have occurred to Valentine/Destiny, including, but not limited to,

compensatory damages in excess of TWO HUNDRED THOUSAND DOLLARS ($200,000.00)

## Count IV

### (Breach of Fiduciary Duty)

**The Key Largo Project**

37.  The statements contained in paragraphs 1 through 32 above are fully incorporated

herein and are to be construed as allegations and averments by Valentine/Destiny.

38.  GCM claims OGM interest in property at issue in his suit filed November 14, 2013.

The named Defendants of the original suit are investors and hold an interest in the OGM claimed

by GCM.

39.  During 2012 and 2013, questions about mineral and leasehold titles in the KEY

LARGO PROJECT, the AMI, "West Teel Creek" and Libertyville investment areas, along with

the meanings of the various documents forming a business association among the parties and

subsequent alleged amendments to contractual documents, including but not limited to emails,

correspondence and verbal communications, became confused.  In an effort to force the partners

out Gulf Coast Mineral and Gary Billingsley  brought this action seeking the court to turn over

all assets of the investment properties to Gulf  Coast Mineral and Gary Billingsley only.

40.  Valentine made several requests (phone and email) for a complete and adequate

accounting of the assets and funds contributed to Gulf Coast Mineral and Gary Billingsley.  Even

though the contractual documents specifically required Gulf Coast Mineral and Gary Billingsley

to provide reports, information, and data to Valentine, and even though specified requests for this

data was submitted separately to Gulf Coast Mineral and  Gary Billingsley, no verifiable

information has been provided.

41.  According to the contractual documents presently available, Gulf Coast Mineral and

Gary Billingsley were to seek oil, gas and mineral interest in specific areas.  Valentine/Destiny

was to invest in this endeavor by depositing substantial sums of money with and/or to Gulf Coast

Mineral and Gary Billingsley.  Thus, Gulf Coast Mineral and Gary Billingsley held in trust

and/or in a fiduciary capacity the funds deposited by the investors, Valentine/Destiny.

42.  In or about February of 2012, Gulf Coast Mineral and Gary Billingsley, and/or

Wattles began submitting invoices for additional payments to be made/contributed by

Valentine/Destiny.  Valentine/Destiny objected to the invoices and demanded an accounting.

Gulf Coast Mineral and Gary Billingsley and/or Wattles then changed the invoices and submitted

the amended invoices for payment, without providing any accounting or explanation.

43.  Valentine/Destiny refuses to pay/contribute further without Gulf Coast Mineral and

Gary Billingsley providing the accounting demanded and previously agreed upon.

44.  In order to rid himself of the questioning investor, Gulf Coast Mineral and Gary

Billingsley brought suit  demanding he (Gulf Coast Mineral /Gary Billingsley) be awarded ALL

assets held within the areas of interest.  His theory is based upon Valentine's alleged non-payment of invoices.

45.  Gulf Coast Mineral and Gary Billingsley, and/or Wattles failed or refused to provide the information, accounting and/or data that they had agreed, and were invested to do.

46.  Gulf Coast Mineral and Gary Billingsley, and/or Wattles failed or refused to provide the care, control, responsibility and/or accounting of the funds invested to his/their care.

47.  Gulf Coast Mineral and Gary Billingsley, and/or Wattles failed or refused to provide any reports, documentation, assets, expenses, costs or any other coherent and complete accounting of the hundreds of thousands of dollars he claims to have expended in area and for the identified purpose of the agreed arrangement.

48.  Gulf Coast Mineral and Gary Billingsley are attempting to use the Court system to extort concessions and assets from its investors.

49.  Gulf Coast Mineral and Gary Billingsley's conduct regarding the KEY LARGO PROJECT, the AMI, "West Teel Creek" and Libertyville was wrongful.

50.  As agent of its investors and/or partners in relation to those investments called the KEY LARGO PROJECT, the AMI, "West Teel Creel" and Libertyville Gulf Coast Mineral and Gary Billingsley had a fiduciary duty to Valentine/Destiny.

51.  In accordance with their fiduciary duties of loyalty, care, good faith and fair dealing, Gulf Coast Mineral and Gary Billingsley were and are obligated to refrain from participating in any transactions where their loyalties are divided, participating in any transaction where they receive a personal financial benefit, or unjustly enriching themselves at the expense of or to the detriment of Valentine.

52.  Gulf Coast Mineral and Gary Billingsley, separately and together, breached fiduciary duties owed to Valentine/Destiny, engaged in self-dealing, hid data, refused information, demanded unreasonable and unexplained payments, and obtained for themselves personal benefits.

53.  By reason of the foregoing acts, practices, and course of conduct, Gulf Coast Mineral and Gary Billingsley have failed to exercise the required care and diligence in the exercise of their fiduciary obligations toward Valentine/Destiny, and have breached the confidential relationship arising therefrom, thereby causing damage to Valentine/Destiny.

54.  Gulf Coast Mineral and Gary Billingsley converted to their own use property and/or business opportunities which belong in whole or in part to Valentine/Destiny, or held and controlled by them for the benefit of Valentine/Destiny.

55.  Gulf Coast Mineral and Gary Billingsley had an obligation to communicate material facts because of their confidential and fiduciary relationships with Valentine/Destiny, and because of the particular circumstances of this case.  Valentine/Destiny was harmed because Gulf Coast Mineral and Gary Billingsley concealed, suppressed, hid, or withheld material facts concerning their conduct.  Valentine/Destiny did not know of the important facts, and was harmed as a result.

56.  Gulf Coast Mineral and Gary Billingsley committed deceit and promissory fraud by suggesting facts they believed not to be true, or by asserting facts with no reasonable ground for believing them to be true, or suppressed facts that they were bound to disclose, or gave information of other facts that were likely to mislead for want of communication of material facts, or made a promise to Valentine/Destiny without any intention of performing it.  Gulf Coast Mineral and Gary Billingsley willfully deceived Valentine/Destiny with the intent to induce them

to alter their position to their injury or risk, and they are liable for the damage Valentine/Destiny thereby suffered.

57.  As stated, damages have occurred to Valentine/Destiny, including, but not limited to, compensatory damages in excess of TWO HUNDRED THOUSAND DOLLARS ($200,000.00) plus Punitive Damages, all costs of this action including a reasonable attorney's fee.

**COUNT V**
**(Accounting)**

58.  The statements contained in paragraphs 1 through 57 above are fully incorporated herein and are to be construed as allegations and averments by Valentine/Destiny.

59.  The property rights and interests described herein involve the existence of a fiduciary relationship between Gulf Coast Mineral, Gary Billingsley and Valentine/Destiny.  The ownership and status of these assets are complicated matters and difficult to trace or determine because of Gulf Coast Mineral and Gary Billingsley's and/or Wattles' control of the transactions affecting Valentine/Destiny's interest.

60.  The correct amount of money, assets, and/or interests due Valentine/Destiny cannot be ascertained without an accounting of the various properties or assets controlled by Gulf Coast Mineral and Gary Billingsley  and/or Wattles.  An audit is required.

61.  An accounting is necessary to determine the benefits derived by Gulf Coast Mineral and Gary Billingsley and/or Wattles from transactions as to which there was a fiduciary duty to Valentine/Destiny.

62.  As stated, damages have occurred to Valentine/Destiny, including, but not limited to, compensatory damages in excess of TWO HUNDRED THOUSAND DOLLARS ($200,000.00) plus Punitive Damages, all costs of this action including a reasonable attorney's fee.

## COUNT VII
### (Negligence)

63.  The statements contained in paragraphs 1 through 62 above are fully incorporated herein and are to be construed as allegations and averments by Valentine/Destiny.

64.  Gulf Coast Mineral and Gary Billingsley and/or Wattles failed to use reasonable care to prevent harm to Valentine/Destiny.  Gulf Coast Mineral and Gary Billingsley and/or Wattles acted in a way that a reasonably prudent person would not do in a similar situation, or failed to do something that a reasonably prudent person would have done in a similar situation, proximately causing damage to Valentine/Destiny as herein described.

63.  As stated, damages have occurred to Valentine/Destiny, including, but not limited to, compensatory damages in excess of TWO HUNDRED THOUSAND DOLLARS ($200,000.00) plus Punitive Damages, all costs of this action including a reasonable attorney's fee.

## COUNT VIII
### (Wantonness)

64.  The statements contained in paragraphs 1 through 63 above are fully incorporated herein and are to be construed as allegations and averments by Valentine/Destiny.

65.  With reckless indifference to the consequences,  Gulf Coast Mineral and Gary Billingsley consciously used information provided by Valentine/Destiny in confidence to usurp and frustrate Valentine/Destiny's business objective and being conscious that, from such actions, injury would likely or probably result to Valentine/Destiny.

66.  Gulf Coast Mineral and Gary Billingsley's actions did, in fact, injure Valentine/Destiny through Gulf Coast Mineral and Gary Billingsley's refusal to deliver mineral

leases as contemplated for the KEY LARGO PROJECT, the AMI, Libertyville and "West Teel Creek".

67.  By engaging in such actions and practices, Gulf Coast Mineral and Gary Billingsley have engaged and continue to engage in repeated wanton acts and practices in violation of Alabama common law, proximately causing damage to Valentine/Destiny as herein described.

68.  Gulf Coast Mineral and Gary Billingsley's conduct was and is knowingly intentional, gross, oppressive, malicious, fraudulent and/or committed with the intention to cause injury.

69.  As stated, damages have occurred to Valentine/Destiny, including, but not limited to, compensatory damages in excess of TWO HUNDRED THOUSAND DOLLARS ($200,000.00) plus Punitive Damages, all costs of this action including a reasonable attorney's fee.

## COUNT IX

### (Equitable Relief: Constructive Trust and Other Equitable Relief)

70.  The statements contained in paragraphs 1 through 69 above are fully incorporated herein and are to be construed as allegations and averments by Valentine/Destiny.

71.  Valentine/Destiny claim an equitable interest in all real property, mineral, and leasehold interests connected to the KEY LARGO PROJECT, the AMI, "West Teel Creek" and Libertyville  that is or has been under Gulf Coast Mineral and Gary Billingsley 's control.

72.  Valentine/Destiny seek imposition of a constructive trust on all fluids or property of Gulf Coast Mineral and Gary Billingsley, including mineral interest, that involve holdings, distributions, profits, or proceeds retained or obtained through their breach of fiduciary duties to Valentine/Destiny or through any other misconduct.

73.  The constructive trust should include, at minimum, standard leases for those mineral interests acquired, held, or claimed by Gulf Coast Mineral and Gary Billingsley in the KEY LARGO PROJECT, the AMI, "West Teel Creek" and Libertyville.

74.  Valentine/Destiny is entitled to the disgorgement, rescission, and restitution of all holdings, distributions, profits, or proceeds obtained by Gulf Coast Mineral and Gary Billingsley related to and resulting from their misconduct.

75.  As stated, damages have occurred to Valentine/Destiny, including, but not limited to, compensatory damages in excess of TWO HUNDRED THOUSAND DOLLARS ($200,000.00) plus Punitive Damages, all costs of this action including a reasonable attorney's fee.

## PUNITIVE DAMAGES

76.  The statements contained in paragraphs 1 through 75 above are fully incorporated herein and are to be construed as allegations and averments by Valentine/Destiny.

Each of the Defendants:

a.      engaged in intentional misrepresentation, deceit, or concealment of a material fact that the concealing party had a duty to disclose, which was gross, oppressive, or malicious and committed with the intention on the part of Gulf Coast Mineral and Gary Billingsley and/or Wattles of thereby depriving Valentine/Destiny of property or legal rights or otherwise causing injury;

b.      intentionally did a wrongful act without just cause or excuse, either with an intent to injure Valentine/Destiny or their property, or under such circumstances that the law would imply an evil intent; or

c.      engaged in conduct which was carried on with a reckless or conscious disregard of the rights of Valentine/Destiny; or

      d.      subjected Valentine/Destiny to cruel and unjust hardship in conscious disregard of their rights.

      77.  Valentine/Destiny are entitled to punitive damages because Gulf Coast Mineral and Gary Billingsley and/or Wattles consciously or deliberately engaged in oppression, fraud, wantonness, or malice with regard to Valentine/Destiny.

**PRAYER FOR RELIEF**

      WHEREFORE, Valentine/Destiny demand judgment against GCM/Billingsley and/or Wattles, and each of them, respectively, in accordance with the foregoing Counts against them, as follows:

      a.      For a full and complete account of all of GCM/Billingsley's actions, conducted in a fiduciary or confidential relationship with Valentine/Destiny, including an account as to all monies and property interests received and disbursed by GCM/Billingsley, all investments made by GCM/Billingsley, all income collected by GCM/Billingsley, and all charges for compensation made by GCM/Billingsley against such properties, as the foregoing relate to the KEY LARGO PROJECT, the AMI, "West Teel Creek" and Libertyville, and any other transaction in which GCM/Billingsley maintained a fiduciary or confidential relationship with Valentine/Destiny;

      b.      For the monies and/or property interests found to be due from GCM/Billingsley to Valentine/Destiny as a result of such accounting;

      c.      For actual compensatory damages in an amount of not less than $75,000.00 and for the interest on any amount owed;

d.      For punitive damages as allowed by applicable law in an amount set by a jury and sufficient to punish GCM/Billingsley for their wrongful conduct and to deter wrongful conduct in the future;

e.      For the costs of this action, including reasonable attorney's fees;

f.      For equitable relief imposing a constructive trust and ordering disgorgement, rescission, and restitution; and

g.      For such other, further, and different legal and equitable relief to which Valentine/Destiny may prove itself entitled, or as the Court may deem proper.

### JURY DEMAND

**PLAINTIFFS DEMAND A TRIAL BY JURY AS TO ALL MATTERS TRIABLE BY JURY.**

Respectfully submitted,

*/s/ Gregory L. Albritton*
Gregory L. Albritton (ALB011)
Attorney for Plaintiffs
112 B Court Street
Evergreen, Alabama  36401
251-578-6900
galbritton@att.net

**/s/** Larry C. Moorer
Larry C. Moorer
Bar Number ASB-0337-R81L
Attorney for Plaintiffs
107 North Jackson St.
Mobile, AL  36602
(251) 432-0002
Fax: (251) 432-0040
E-mail: lcmoorer@att.net

<u>CERTIFICATE OF SERVICE</u>

I  hereby certify  I have on this 20th  day of  February,  2015,  electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to all parties:

<u>*/s/ Larry C. Moorer*        </u>
Larry C. Moorer