**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF ALABAMA**
**SOUTHERN DIVISION**

| | | |
|---|---|---|
| VALENTINE VENTURES, LLC, and DESTINY ENERGY, LLC, | ) ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | Case No.: 1:14-cv-00352-WS-N |
| GULF COAST MINERAL, LLC, GARY BILLINGSLEY, PATRICIA A. BILLINGSLEY, LARRY WATTLES, and JUDY WATTLES, | ) ) ) ) ) | JURY TRIAL DEMANDED |
| Defendants. | ) ) ) | |

## THIRD AMENDED COMPLAINT

1.      This is an action by Valentine Ventures, LLC, and Destiny Energy, LLC, ("Plaintiffs") against Gulf Coast Mineral, LLC, Gary Billingsley, Patricia A. Billingsley, Larry Wattles, and Judy Wattles ("Defendants"). It alleges that the Defendants entered into a joint venture with the Plaintiffs with the intent to defraud the Plaintiffs of their investment and the proceeds of their investment in oil and gas leases. This Complaint includes claims: (1) against all Defendants for violations of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), (2) all Defendants for a conspiracy to violate RICO, (3) against Gulf Coast Mineral, LLC, for breach of contract, (4) against Gulf Coast Mineral, LLC, and Gary Billingsley for fraud, (5) against Gulf Coast Mineral, LLC for breach of fiduciary duty, (6) against Gulf Coast Mineral, LLC, for an accounting, (7) against Gulf Coast Mineral, LLC, and Gary Billingsley for negligence, (8) against Gulf Coast Mineral, LLC, and Gary Billingsley for wantonness, and (9) for a constructive trust.

2.      The Defendants have associated to form an Enterprise. The Enterprise's purpose is to enter into joint ventures between Gulf Coast Mineral, LLC, and unsuspecting investors, purportedly to acquire and sell oil and gas leases. In reality, the joint venture is used as a vehicle to defraud the investors of their investment and the proceeds of their investment. This Enterprise is conducted by the Defendants through the use of interstate mails and wires.

3.      In 2011, the Plaintiffs became ensnared in the Enterprise. They entered into a joint venture with Gulf Coast Mineral, LLC, to acquire and sell oil, gas, and mineral leases on land in Covington County, Alabama. While the Plaintiffs and Gulf Coast Mineral, LLC, agreed that the ownership of the Libertyville and Key Largo leases was to be divided 75%/25% and that the ownership of the West Teel Creek leases was to be divided 50%/50%, Gulf Coast Mineral, LLC, did not intend to divide the proceeds accordingly. When the leases were sold to Renpetco II, LLC, and other investors ("Renpetco"), Gulf Coast Mineral, LLC, with the knowledge and participation of the other Defendants, refused to divide the proceeds in accordance with the agreement. When the Plaintiffs protested, the Defendants attempted to conceal their fraud by producing false invoices, making false statements, and ultimately filing a false lawsuit. As a result of the Defendants' conduct, the Plaintiffs have been deprived of the value of their investment.

**JURISDICTION**

4.      This Court has jurisdiction pursuant to 28 U.S.C. § 1331 because this is an action arising under the laws of the United States, specifically 18 U.S.C. § 1962. This Court has supplemental jurisdiction over the Plaintiffs' state-law claims pursuant to 28 U.S.C. § 1367(a).

5.      Venue is proper in this district pursuant to 28 U.S.C. § 1391 and 18 U.S.C. § 1965(a) because all Defendants reside in this district, all Defendants are subject to personal

jurisdiction in this district, and a substantial part of the events or omissions giving rise to the Plaintiffs' claims occurred in this district.

## PARTIES

6.    Plaintiff Valentine Ventures, LLC, is a limited liability company formed under the laws of the State of Alabama, with its principal place of business at 1590 Highway 49, Columbiana, Alabama 35051. Its member is Terry Valentine.

7.    Plaintiff Destiny Energy, LLC ("Destiny") is a limited liability company formed under the laws of the State of Louisiana, with its principal location of business located at 650 Poydras Street, Suite 2660A, New Orleans, Louisiana 70130. Its members are R. Bruce Wallis and Harvey A. Kelley, Jr.

8.    Defendant Gulf Coast Mineral, LLC ("GCM") is a limited liability company formed under the laws of the State of Alabama, with its principal location of business located at 109 East 14th Avenue, Gulf Shores, Alabama 36542. GCM's members, to Valentine/Destiny's knowledge, information and belief, are Gary Billingsley and Patricia A. Billingsley.

9.    Defendants Gary Billingsley and Patricia A. Billingsley ("Billingsley") are resident citizens of Baldwin County, in the State of Alabama, and are over the age of 19 years.

10.    Defendants Larry Wattles, brother-in-law of Gary Billingsley, and Judy Wattles, sister of Gary Billingsley, ("Wattles") are employees, agents, representatives and/or members of Gulf Coast Mineral, LLC, and to Valentine/Destiny's knowledge, information and belief, are resident citizens of the State of Alabama.

## FACTUAL BASIS

11.    The Defendants, using the name Gulf Coast Mineral, LLC, solicits investments in oil, gas, and mineral leases using the internet. In soliciting those investments, the Defendants do

not disclose any of the past or current lawsuits that have been filed against Gulf Coast and Gary Billingsley regarding oil and gas investment fraud. Interested investors are solicited to invest funds with Gulf Coast and to give the Defendants control over the accounting and distribution of those funds. The Defendants then use their control over those funds to steal those funds from investors.

12.     In 2011, after being contacted by the Plaintiffs, Gary Billingsley, under the banner of Gulf Coast, solicited funds from the Plaintiffs to invest in the development of oil, gas, and minerals leases located in Alabama and Louisiana. The Alabama projects were known as Libertyville, Key Largo and West Teel Creek. Billingsley and the other Defendants conducted communications related to these investments via electronic mail, US mail, and telephone. The Plaintiffs believe that all of the Defendants' electronic-mail communications with them originated from the offices of Gulf Coast Mineral, LLC. In addition, Gary and Patricia Billingsley met with Harvey Kelley and his wife in the spring of 2011 in Louisiana.

## A.     Libertyville Project

13.     In July of 2011, Gary Billingsley proposed the Libertyville project, located in Covington County, Alabama, to the Plaintiffs stating that it was a hot area, that he was familiar with the area, and that he knew some of the landowners in the area.  He proposed buying leases in the area with the intent of eventually selling the leases to other companies that had interest in the area. Billingsley did not disclose that he and Gulf Coast's geological consultant had conflicts of interest that would prevent them from selling leases.

14.     The partners agreed to the Libertyville project and paid their 75% share of three invoices, which were purportedly for the purchase of five leases. In fact, Gulf Coast had purchased only three leases on the Plaintiffs' behalf. The invoices were sent to the Plaintiffs via

electronic mail in July 2011, September 2011, and in February 2012, respectively. The Plaintiffs paid those invoices via U.S. mail on or about July 8, 2011, September 28, 2011, and March 7, 2012, respectively. Upon information and belief, Gulf Coast received those checks via U.S. mail and deposited them in Gulf Coast's bank account. The three invoices totaled $83,022.82 for the 100% partnership interest.

15.     Following the payment of the three invoices, Plaintiff Valentine inquired about the status of the Libertyville leases on multiple occasions via telephone. Plaintiff Valentine was informed that Billingsley and Gulf Coast's geological consultant had conflicts of interest, which apparently made it impossible to sell the leases. The Plaintiffs would not have agreed to the Libertyville project had they been made aware of the conflicts of interest. As a result of those undisclosed conflicts, the Plaintiffs lost their total investment. Gulf Coast gained approximately $11,800 as a result of their misrepresentations.

**B.     Key Largo and West Teel Projects**

16.     On June 21, 2011, Gulf Coast and the Plaintiffs entered into a cost-sharing agreement related to the Key Largo Project. A true and correct copy of this agreement is attached hereto as Exhibit A. The parties agreed that the Plaintiffs would have a combined 75% interest in leases related to the Key Largo Project and that Gulf Coast would have a 25% interest in those leases. Gulf Coast agreed that it would provide an accurate accounting to the Plaintiffs showing landman costs, lease bonuses paid, legal, and any other costs associated with the Key Largo Project. The Defendants never intended to provide such an accurate accounting. The final contract was sent to each party by electronic mail for their signature. A true and correct copy of this electronic mail is attached hereto as Exhibit B.

17.     A proposed budget was attached to the contract, and the parties agreed to pay their pro rata share of the estimated budget. The Plaintiffs paid their share via checks sent through the U.S. Mail on or about June 28, 2011. Upon information and belief, Gulf Coast received those checks via U.S. mail and deposited those checks into an account owned by Gulf Coast.

18.     On August 17, 2012, Gulf Coast and the Plaintiffs entered into a cost-sharing agreement related to the West Teel Creek Project, which was reflected in an addendum to the Key Largo Project contract. A true and correct copy of this addendum is attached hereto as Exhibit C. The parties agreed that the Plaintiffs would have a combined 50% interest in leases related to the West Teal Project and that Gulf Coast would have a 50% interest in those leases. Gulf Coast agreed that it would provide an accurate accounting to the Plaintiffs showing landman costs, lease bonuses paid, legal, and any other costs associated with the West Teel Creek Project. The Defendants never intended to provide such an accurate accounting. The final addendum was sent to each party by electronic mail for their signature. A true and correct copy of this electronic mail is attached hereto as Exhibit D.

19.     On August 23, 2012, Gulf Coast negotiated a sale of the Key Largo and West Teel Creek leases to Renpetco. In a September 4, 2012, e-mail from Gary Billingsley to Bruce Wallis, Gulf Coast agreed to distribute $300,000 of the $875,000 that had accrued from the sale to the Plaintiffs, with a further distribution to be made when the final accounting was completed. Billingsley never intended to complete an accurate final accounting or to distribute to the Plaintiffs what they were owed beyond the initial distribution. Billingsley transferred $150,000 to Destiny Energy, LLC, via interstate wire transfer. Billingsley transferred $75,000 to Valentine Ventures, LLC, via wire transfer.

20.     Subsequent to the initial $300,000 disbursement, the Plaintiffs repeatedly asked Gulf Coast for a final accounting so the balance of the $875,000 could be distributed. Gulf Coast ignored those requests.

21.     In connection with the sale of the leases to Renpetco, Gulf Coast agreed with the Plaintiffs that the Plaintiffs were to retain a 7.5% interest in the Key Largo leases and a 5.125% interest in the West Teel Creek leases. Gulf Coast and Billingsley did not intend to honor this agreement with the Plaintiffs. Accordingly, Gulf Coast concealed the agreement with the Plaintiffs from Renpetco. As a result, Renpetco attributed the Plaintiffs' retained interests to Gulf Coast, allowing Gulf Coast to maintain control over the Plaintiffs' retained interests.

22.     In accordance with its fraudulent intent, Gulf Coast never assigned the Plaintiffs' interests in Renpetco to the Plaintiffs, as Gulf Coast agreed to do. As a result, the Plaintiffs were unable to sell their interests in whole or in part. In addition, the Plaintiffs continue to pay expenses associated with these retained interests, even though the interests have never been assigned to them. Instead, as a result of its fraud, Gulf Coast continues to control the interests.

23.     In an electronic mail dated January 16, 2013, Gary Billingsley asked the Plaintiffs to pay their proportionate share of an invoice for $68,925 that Gulf Coast had received from Renpetco with respect to the Key Largo and West Teel Creek leases. That invoice related to the interest that Gulf Coast had fraudulently failed to assign to the Plaintiffs. Because Gulf Coast had not distributed the remainder of the $875,000 received from the Renpetco sale, the Plaintiffs responded that Billingsley should either (1) pay the Plaintiffs' share from the undistributed funds or (2) distribute some of the undistributed funds to the Plaintiffs so that they could pay their share. Gary Billingsley responded that he thought all the profit had been distributed but that he

would check the numbers. At the time Billingsley made this statement, he knew that it was false. Indeed, following Billingsley's response, Gulf Coast paid the entire bill.

24.     The Plaintiffs continued to press for a final accounting. On February 28, 2013, Judy Wattles sent an electronic mail to the Plaintiffs stating that she had completed the final billing, that Gary Billingsley had taken it home to review, and that it would be sent to the Plaintiffs in one or two business days. That statement was false, and the final billing was not provided as described.

25.     On March 20, 2013, Judy Wattles forwarded financial statements to the Plaintiffs that were dated March 18, 2013. Those statements noted that they had been approved by Gary Billingsley on March 20, 2013. The statements contained numerous falsehoods, including, but not limited to, the following:

   a.   Charges for items that were not part of the agreed expenses for the venture, including $54,750.00 of overhead charges;

   b.   Charges for aged invoices that had not previously been charged;

   c.   A claim that Gulf Coast was owed $1,775.91 by Destiny Energy, LLC;

   d.   Charges for the West Teel Creek project that totaled $88,918.69, when actual costs for the project billed to Renpetco totaled $20,565; and

   e.   Charges for the taking of five leases in the Libertyville project, when actually only three leases had been taken.

26.     After reviewing the statements from Gulf Coast, Bruce Wallis requested copies of certain invoices and credit memos. Judy Wattles responded that Gary Billingsley, Pat Billingsley, and herself had spent countless hours working on the statements and had performed a complete audit of the accounts. Upon subsequent investigation, Wallis determined that, among

other things, Renpetco had paid $77,161.51 to Gulf Coast for some additional acreage connected with the Key Largo project. . Although Gulf Coast billed the Plaintiffs for expenses connected with this acreage, Gulf Coast did not (1) inform the Plaintiffs of this payment or (2) include the $77,161.51 payment in the final statement of accounts.

27.     Following Wallis's inquiry about the statements, on May 22, 2013, Gary Billingsley sent an electronic mail to Bruce Wallis stating that he would look at the accounts starting the next week and would get back to Wallis when they were done. This statement was false, and Gary Billingsley said it only to buy additional time. Billingsley never completed a final review of the accounts.

28.     When it became clear to the Plaintiffs that Gary Billingsley was not going to complete a final accounting or meet with the Plaintiffs to settle the accounts, Wallis sent a demand to Gulf Coast, on October 28, 2013, for the payment of $87,262.82 to Destiny Energy, which Wallis calculated as the amount owed based on the information available to him. A true and correct copy of the demand letter is attached hereto as Exhibit E. Gary Billingsley sent Wallis an electronic mail message on November 4, 2013 inquiring how Wallis calculated his demand amount. On November 6, 2013, Wallis sent an email to Gary Billingsley explaining his computation. Gary Billingsley did not respond.

29.     On November 13, 2013, Wallis wrote an electronic mail message to Gary Billingsley asking for a response. On November 13, 2013, Billingsley responded to Wallis, via electronic mail, stating that he and his team were working on it and should have an update in a day or so. On November 14, 2013, Gary Billingsley sent to Wallis, via electronic mail, an entirely new set of financial documents that revealed $111,426.78 in new charges for a project that had finished approximately fifteen months earlier. The new charges predominantly pertained

to land work that was purportedly headed and supervised by Larry Wattles. After incorporating these charges, the new statement showed that Destiny Energy owed a balance of $11,414.37. The Wattles charges and the statement showing a balance owed by Destiny Energy were false.

30. Contemporaneously with the submission of this new statement, on November 14, 2013, Gulf Coast filed suit against Valentine Ventures, LLC, Destiny Energy, LLC, Bruce Wallis, and Harvey Kelley in the Circuit Court of Conecuh County, Alabama, seeking the reduction or elimination of the Plaintiffs' interests in the Key Largo Project and West Teel Project leases for allegedly not paying their share of expenses under the contract.

## RICO ALLEGATIONS

**A.** **The Enterprise**

31. The Defendants were associated in fact as an "Enterprise," as that term is defined by 18 U.S.C. § 1961(4). Gary and Pat Billingsley were members of Gulf Coast. Larry and Judy Wattles did work on behalf of Gulf Coast.

32. That Enterprise was formed for the common purpose of enriching certain of its members through a pattern of mail and wire fraud that deprived unsuspecting investors of the value of their investments in joint ventures with Gulf Coast.

33. Each associate of the Enterprise conducted or participated, directly or indirectly, in the conduct of the Enterprise's affairs through the pattern of racketeering activity described below. Larry Wattles submitted false invoices to Gulf Coast. Pat Billingsley and Judy Wattles compiled false financial information for Gulf Coast. Gary Billingsley sent out false information of Gulf Coast's behalf, in addition to developing and directing the scheme to defraud.

34.    The Enterprise is engaged in and affects interstate commerce in a variety of ways. The Enterprise uses an internet website to solicit investors. The Enterprise uses those investments to develop leases. The Enterprise sells those leases to entities in other states.

**B.    The Pattern of Racketeering Activity**

35.    As described more fully herein, the Defendants conduct the Enterprise through an ongoing pattern of racketeering as defined by 18 U.S.C. § 1961(5).

36.    The pattern of racketeering activity engaged in by the Defendants consists of more than two acts of racketeering activity, the most recent of which occurred within ten years after the commission of a prior act of racketeering activity.

37.    Under 18 U.S.C. § 1961(1), "racketeering activity" includes any act that is indictable under 18 U.S.C. §§ 1341 (relating to mail fraud) or 1343 (relating to wire fraud).

38.    Mail fraud under 18 U.S.C. § 1341 consists of the following elements: (1) intentional participation in a scheme or artifice to defraud and (2) the use of the mails in furtherance of the scheme. *See United States v. Lopez-Lukis*, 102 F.3d 1164, 1168 (11th Cir. 1997). Wire fraud under 18 U.S.C. § 1343 consists of the following elements: (1) intentional participation in a scheme or artifice to defraud and (2) use of the interstate wires in furtherance of the scheme. *United States v. Hasson*, 333 F.3d 1264, 1270 (11th Cir. 2003). Except for the jurisdictional nexus (mails in § 1341 and interstate wires in § 1343), the statutes are the same and interpreted identically. Accordingly, cases decided under one statute are controlling under the other. *See United States v. deVegter*, 198 F.3d 1324, 1328 n.3 (11th Cir. 1999).

39.    Under 18 U.S.C. § 1346, a "scheme or artifice to defraud" can include "a scheme or artifice to deprive another of the intangible right of honest services." "[A] private sector

violation of § 1346 honest services fraud involves a breach of a fiduciary duty and reasonably foreseeable economic harm." *deVegter*, 198 F.3d at 1330.

40.     The Defendants intentionally participated in at least two schemes or artifices to defraud. First, there was a scheme to defraud the Plaintiffs of their investment in the Key Largo and West Teel Creek projects. Second, there was a scheme to defraud the Plaintiffs of the honest services of Gulf Coast.

41.     With respect to the first scheme, the Defendants sought to deprive the Plaintiffs of their investments by (1) submitting false financial information to the Plaintiffs on which the Defendants intended the Plaintiffs to rely, (2) making false statements to the Plaintiffs regarding when information would be provided, and (3) concealing the Plaintiffs' retained interests in the Key Largo and West Teel Creek projects.

42.     Each of the Defendants participated in this scheme. Gulf Coast and Billingsley sent false financial information to the Plaintiffs, made false statements to the Plaintiffs, and concealed the Plaintiffs' retained interests. Pat Billingsley and Judy Wattles helped to compile false information. Judy Wattles forwarded false financial statements to the Plaintiffs. Larry Wattles participated in the creation of false invoices that were used to prepare false financial statements. Each of the Defendants participated in the scheme even if they didn't personally benefit from it: "'[a] participant in a scheme to defraud is guilty even if he is an altruist and all the benefits of the fraud accrue to other participants.'" *U.S. v. Sorich*, 523 F.3d 702, 709 (7th Cir. 2008) (quoting *United States v. Spano*, 421 F.3d 599, 603 (7th Cir. 2005)).

43.     As a participant in a joint venture with the Plaintiffs, Gulf Coast owed fiduciary duties to the Plaintiffs. Gulf Coast intentionally breached these fiduciary duties by (1) submitting false financial information to the Plaintiffs, (2) making false statements to the Plaintiffs

regarding the timing of information, (3) concealing the Plaintiffs' retained interests in the Key Largo and West Teel Creek projects, (4) knowingly and intentionally failing to apprise Plaintiffs of its conflicting interests pertaining to their investments, and (5) misrepresenting the number of Libertyville leases purchased on the Plaintiffs' behalf. Gulf Coast should have reasonably foreseen that those breaches would result in harm to the Plaintiffs by (1) depriving them of the proceeds of their investment and (2) delaying their recovery of the proceeds of their investment. *See deVegter*, 198 F.3d at 1329-30 (describing cognizable harms from honest services fraud in the private sector).

44.     Each of the Defendants participated in this scheme. Gulf Coast and Gary Billingsley sent false financial information to the Plaintiffs, made false statements to the Plaintiffs, and concealed the Plaintiffs' retained interests. Pat Billingsley and Judy Wattles helped to compile false information. Judy Wattles forwarded false financial statements to the Plaintiffs. Larry Wattles participated in the creation of false invoices that were used to prepare false financial statements.

45.     In furtherance of these schemes to defraud, the Defendants used both the mails and interstate wires. Specifically, the mails and interstate wires were used in furtherance of the schemes to defraud on at least the following occasions:

    a.  In connection with the Libertyville Project, as set forth in Paragraphs 13 to 15 above;

    b.  In connection with the fraudulent charging of costs, as set forth in Paragraph 23 above;

    c.   In connection with false financial statements and false representations regarding those financial statements, as set forth in Paragraphs 24 to 27 above; and

    d.   In connection with Gulf Coast's fraudulent failure and refusal to pay Plaintiffs money owed from Renpetco's purchase of Key Largo and West Teel Creek as set forth in Paragraphs 18 to 19 and 28 to 29 above.

46.    Each such violation of 18 U.S.C. §§ 1341 or 1343 constituted an act of "racketeering activity" under 18 U.S.C. § 1961(1)(A).

**C.**    **The Injury**

47.    Under 18 U.S.C. § 1964(c), "any person injured in his business or property" by racketeering activities may sue for those injuries and recover treble damages. A plaintiff may recover any damages proximately caused by the racketeering activity.

48.    The Plaintiffs are entitled to distributions from their joint venture with Gulf Coast. Because of the racketeering activity, the Plaintiffs have been and are unable to obtain an accurate accounting of the distributions to which they are entitled or the distributions themselves. As a result of that injury, the Plaintiffs have suffered damages in the form of the diminished value of their investments.

49.    By conducting the Enterprise through a pattern of racketeering activity, the Defendants have gained control of the Plaintiffs' lost investments and retained interests and have benefitted from the Plaintiffs' payment of their expenses.

### COUNT I
### (RICO 18 U.S.C. § 1962(c))

50.    The Plaintiffs reallege the facts and allegations set forth in paragraphs 1 through 49 above.

51.     Each Plaintiff is a "person," as that term is defined in 18 U.S.C. § 1961(3), which has been injured in its business or property by the conduct of the Defendants in violation of RICO.

52.     Each Defendant is a "person," as that term is defined in 18 U.S.C. § 1961(3), culpable for his or its conduct in violation of RICO.

53.     The Defendants have conducted and participated, directly or indirectly, in the conduct of the Enterprise's affairs through a pattern of racketeering activity, in violation of 18 U.S.C. § 1962(c).

54.     As a direct and proximate result of the Defendants' violations of 18 U.S.C. § 1962(c), the Plaintiffs have been injured in their business and/or property through the diminished value of their investments in an amount to be proven at trial. Under 18 U.S.C. § 1964, the Plaintiffs are entitled to bring this action and to recover herein treble damages and the costs of bringing this lawsuit, including attorneys' fees.

## COUNT II
### (RICO 18 U.S.C. § 1962(d))

55.     Plaintiffs reallege the facts and allegations set forth in paragraphs 1 through 54 above.

56.     Defendants, being persons employed by or associated with the Enterprise described above, unlawfully and willfully combined, conspired, confederated, and agreed with each other to violate 18 U.S.C. § 1962(c), that is, to conduct and participate, directly or indirectly, in the conduct of the affairs of the Enterprise through a pattern of racketeering activity.

57.     As part of the conspiracy, each Defendant agreed to conduct or participate, directly or indirectly, in the conduct of the Enterprise's affairs through the pattern of racketeering activity described above.

58.     The racketeering acts which Defendants committed and caused to be committed were overt acts taken in furtherance of the conspiracy.

59.     As a direct and proximate result of Defendants' violations of 18 U.S.C. § 1962(d), Plaintiffs have been injured in their business or property in an amount to be proven at trial. Under 18 U.S.C. § 1964, Plaintiffs are entitled to bring this action and to recover herein treble damages and the costs of bringing this lawsuit, including attorneys' fees.

## COUNT III
### (Breach of Contract)

60.     Plaintiffs reallege the facts and allegations set forth in paragraphs 1 through 30 above.

61.     Gulf Coast entered into a contract with the Plaintiffs.

62.     The Plaintiffs performed that contract.

63.     Gulf Coast breached that contract.

64.     The Plaintiffs have been damaged in an amount to be proven at trial.

## COUNT IV
### (Fraud)

65.     Plaintiffs reallege the facts and allegations set forth in paragraphs 1 through 30 above.

66.     All of the Defendants made false representations of material fact. Gulf Coast and Billingsley failed to disclose conflicts of interest, sent false financial information to the Plaintiffs, made false statements to the Plaintiffs, and concealed the Plaintiffs' retained interests.

Pat Billingsley and Judy Wattles helped to compile false information. Judy Wattles forwarded false financial statements to the Plaintiffs. Larry Wattles participated in the creation of false invoices that were used to prepare false financial statements.

67.     The Plaintiffs justifiably relied on the Defendant's false representations by (1) investing money with Gulf Coast, (2) paying expenses to Gulf Coast, and (3) refraining from taking immediate actions to protect their interests and recover their investments.

68.     The Plaintiffs' reliance on the false representations caused proximate harm to the Plaintiffs in the form of lost investments and retained interests, payment of expenses that were not owed, and lost opportunities. The Defendants have gained control of the Plaintiffs' lost investments and retained interests and have benefitted from the Plaintiffs' payment of their expenses.

## Count V
### (Breach of Fiduciary Duty)

69.     Plaintiffs reallege the facts and allegations set forth in paragraphs 1 through 30 above.

70.     As a partner with the Plaintiffs in a joint venture and as a trustee of the Plaintiffs' investment, Gulf Coast owed fiduciary duties to the Plaintiffs.

71.     Gulf Coast breached these duties by failing to properly account for and protect the Plaintiffs' investment.

72.     As a result of Gulf Coast's breach, the Plaintiffs have been damaged in an amount to be proven at trial.

## COUNT VI
### (Accounting)

73.     Plaintiffs reallege the facts and allegations set forth in paragraphs 1 through 30 above.

74.     As a partner with the Plaintiffs in a joint venture and as a trustee of the Plaintiffs' investment, Gulf Coast owed fiduciary duties to the Plaintiffs.

75.     Gulf Coast has repeatedly failed to provide a complete and verifiable final accounting of the Plaintiffs' investment.

76.     Conducting such an accounting, given the existence of questionable and false invoices and statements, will be a complicated undertaking.

77.     This Court should use its equitable powers to order and oversee an accounting of the joint venture between Gulf Coast and the Plaintiffs.

## COUNT VII
### (Negligence)

78.     Plaintiffs reallege the facts and allegations set forth in paragraphs 1 through 30 above.

79.     Gulf Coast and Gary Billingsley owed a duty to the Plaintiffs to treat their investments with reasonable care.

80.     Gulf Coast and Gary Billingsley breached their duty of care.

81.     As a result of Gulf Coast and Gary Billingsley's breach, the Plaintiffs suffered harm in the form of the lost value of their investment.

## COUNT VIII
### (Wantonness)

82.     Plaintiffs reallege the facts and allegations set forth in paragraphs 1 through 30 above.

83.     With reckless indifference to the consequences, Gulf Coast and Gary Billingsley consciously and intentionally failed to maintain and account for the Plaintiffs' investment in their joint venture with Gulf Coast.

84.     As a result of Gulf Coast and Gary Billingsley's wanton conduct, the Plaintiffs have suffered damages in an amount to be proven at trial.

## COUNT IX
### (Constructive Trust and Other Equitable Relief)

85.     Plaintiffs reallege the facts and allegations set forth in paragraphs 1 through 84 above.

86.     The Plaintiffs seek imposition of a constructive trust on all property of Gulf Coast and Gary Billingsley, including mineral interests, that was derived from funds related to the Plaintiffs' investments.

87.     The constructive trust should include, at a minimum, standard leases for those mineral interests acquired, held, or claimed by Gulf Coast or Gary Billingsley in the Key Largo and West Tell Creek projects.

88.     The Plaintiffs are entitled to the disgorgement, rescission, and restitution of all holdings, distributions, profits, or proceeds obtained by Gulf Coast Mineral and Gary Billingsley related to and resulting from the misconduct alleged herein.

WHEREFORE, the Plaintiffs demand that this Court enter judgment against the Defendants as follows:

a.     For a full and complete accounting of the joint venture between Gulf Coast and the Plaintiffs;

b.     For the monies and/or property interests found to be due from any Defendant to the Plaintiffs as a result of such accounting;

c.      For damages in an amount to be proven at trial, treble damages, and punitive damages;

d.      For the costs of this action, including reasonable attorney's fees;

e.      For equitable relief imposing a constructive trust and ordering disgorgement, rescission, and restitution; and

f.      For such other, further, and different legal and equitable relief to which the Plaintiffs may prove themselves entitled, or as the Court may deem proper.

JURY DEMAND

Plaintiffs demand a trial by jury.

Respectfully submitted,

*/s/ Gregory L. Albritton*
Gregory L. Albritton (ALB011)
Attorney for Plaintiffs
112 B Court Street
Evergreen, Alabama  36401
251-578-6900
galbritton@att.net

/**s**/ Larry C. Moorer
Larry C. Moorer
Bar Number ASB-0337-R81L
Attorney for Plaintiffs
107 North Jackson St.

Mobile, AL  36602

(251) 432-0002

Fax: (251) 432-0040

E-mail: lcmoorer@att.net

CERTIFICATE OF SERVICE

I hereby certify I have on this 17th day of June, 2015, electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to all parties:

/s/ Larry C. Moorer
Larry C. Moorer